**Victor LANGDEAU, Appellant,**

**v.**

**STATE OF SOUTH DAKOTA and Its Agents, et al., Appellees.**

**No. 71–1149.**

United States Court of Appeals, Eighth Circuit.

June 30, 1971.

Gary J. Pashby, Sioux Falls, filed brief for appellant.

Gordon Mydland, Atty. Gen., Pierre, S. D., and Roger Schiager, Special Asst.

Atty. Gen., William J. Srstka, Jr. Asst. Atty. Gen., filed brief for appellee.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

This is a post conviction appeal from a denial by the federal district court of habeas corpus to a state prisoner in South Dakota. The petitioner raises two issues on appeal: (1) whether the requirement of a $3,000 cash bond was in violation of the defendant's "constitutional right to bail," and (2) whether the defendant's plea of guilty was involuntarily entered.

The defendant was arrested on or about July 10, 1964, and charged with the crime of indecent molestation of a child in violation of S.D.C. § 13.1727 (Supp.1960) now S.Dak.Comp.Laws 22–22–7 (1967). A $3,000 cash bond was required pending trial. As an indigent he was unable to post the bail required. On July 15, 1964, petitioner was appointed trial counsel. On November 18, 1964, he was brought to trial. This resulted in a hung jury.[1] Thereafter, he was returned to jail until January 4, 1965, when he asked leave to withdraw his previous plea and enter a plea of guilty to the charge. He was sentenced to 10 years in the South Dakota penitentiary.

Petitioner has exhausted his state remedies. He was given a full evidentiary hearing in the state court. The decision denying him post conviction relief was affirmed by the South Dakota Supreme Court. Langdeau v. State, S. D., 179 N.W.2d 121 (1970).

Petitioner asserts that he pled guilty because of the conditions of his confinement in the Hughes County Jail. The evidence shows that the jail was not segregated by separate cells, that it was crowded beyond its normal capacity, that petitioner was harassed (primarily because of the nature of the charge pending against him), and that the petitioner did not like the food that was being given to him. At the time petitioner pled guilty he made known to the trial court his overall discontent with the jail conditions. The court then examined petitioner in detail as to whether he was entering his plea solely because of these conditions or whether he knowingly and voluntarily wanted to do so. The trial judge who accepted the plea was the same judge who heard the evidence at petitioner's trial. We have reviewed this evidence. As the trial court commented in accepting the guilty plea, the evidence clearly substantiates petitioner's guilt of the crime charged. In view of petitioner's confinement under the conditions of which he complained, before accepting the plea of guilty the state trial court offered to impanel a jury and give the petitioner an immediate trial. The petitioner then answered that this would not be necessary because he wanted to enter his plea. Petitioner stated at the state post-conviction evidentiary hearing that his appointed counsel had told him that if he pled guilty he would get a reduced sentence. Although there is nothing of record demonstrating any plea bargaining, the statement of the trial judge indicates that the defendant did receive a reduced sentence by reason of his guilty plea.

Our analysis of the record leads us to conclude that petitioner's discontent with his preconviction existence in the community jail[2] served only as a circumstance, perhaps at best motivating the timing of his decision to plead guilty. Petitioner's distaste for his jail food is no more a factor than his interest in obtaining a reduced sentence. As taught in Brady v. United States, 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), such factors serve only as "but for" reasons surrounding the guilty plea. The significant test remains

---

1. According to the trial judge the verdict stood at 11 to 1 for conviction.

2. See McGee, "Our Sick Jails," Federal Probation 3, March 1971.

yet to be answered: whether the plea of guilty was "an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences.'" McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L. Ed.2d 763 (1970). Using *Brady* as the paradigm, the fact that the jail conditions "caused" the plea does not demonstrate that petitioner was unaware of all the surrounding factors and their "likely consequences." Here the record unequivocally demonstrates to the contrary. The facts are insufficient to hold as a matter of law that invidious discrimination or psychological coercion induced an involuntary guilty plea. The state trial court, as did the federal district court, placed emphasis on the fact that the petitioner was represented by competent counsel and waived the court's offer to immediately retry the case. Petitioner's deliberate choice to waive trial cannot be easily eradicated years after the event. Many considerations may influence a defendant to plead guilty. However, these influences cannot serve to set aside a guilty plea made where counsel is present and the defendant is shown to be capable of making a deliberate and knowing decision. We cannot say that there did not exist sufficient facts to support the state trial court's, and the federal district judge's, finding that the plea was voluntarily made. The decisions of McMann v. Richardson, supra; Brady v. United States, supra; and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), along with North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), require a prisoner represented by competent counsel, where a *full* and *fair* guilty plea hearing has taken place, to assume a heavy burden to set aside his guilty plea.

In view of the conviction being sustained, the issue concerning the constitutionality of preconviction bail is moot.

Judgment affirmed.