Larry Wayne **COLEMAN, Appellant-Movant,**

v.

**STATE of Missouri, Respondent.**

No. 56183.

Supreme Court of Missouri, Division No. 1.

Dec. 13, 1971.

Roswell P. Henderson, Moberly, court appointed attorney for appellant.

John C. Danforth, Atty. Gen., Thomas Stahl, Special Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is a proceeding under Criminal Rule 27.26, V.A.M.R., to vacate and set aside a judgment of conviction and sentence of three years' imprisonment imposed upon Larry Wayne Coleman by the Circuit Court of Randolph County on December 18, 1968, upon a plea of guilty to a charge of escape from the Missouri Training Center for Men on June 19, 1968.

Following an evidentiary hearing at which movant was present personally, represented by appointed counsel, and at which he testified and adduced the testimony of three fellow prisoners in his behalf, the circuit judge filed findings of fact and conclusions of law and overruled the motion, hence this appeal.

Movant seeks reversal of the order of the circuit court for the following reasons: his plea was involuntary; he had ineffective counsel; the court failed to comply with Criminal Rule 25.04, and the information was defective in substance and form.

## PLEA INVOLUNTARY?

Movant contends that his guilty plea was involuntary for the following reasons as to each of which movant gave supporting testimony:

(1) that he pleaded guilty in order to secure early release from the punishment

of confinement in "the basement" at the penitentiary, where escapees and other offenders against institution rules are customarily kept and segregated while awaiting trial; that he was denied his usual cigarettes, and could spend only a dollar or two a month, was denied visitation with the regular prison population, and kept in a cell with four persons, a cell designed for two persons. He testified that he had no choice but to plead guilty because he knew that if he awaited a trial by jury he might have to endure punishment of confinement in the basement for a year or more and knew it was the practice to release inmates confined in the basement as soon as they "got their time." The prison classification director testified to the prison policy of placing returned escapees in maximum security from which they are released after sixty days or after prosecution for escape, whichever comes first. Movant was confined in the basement from November 27, 1968 to December 18, 1968. Three fellow prisoners in the basement testified that they advised movant as to the policies and procedures relating to release from maximum security but none testified to any oppressive or coercive conditions. One prisoner testified that movant was nervous, upset and extremely agitated while being held in the basement but movant conceded that he was not beaten or mistreated by the guards. The court found "that this claimed coercion or duress was not such as would nullify the sentence and judgment entered by the court upon movant's plea of guilty," and that in pleading guilty movant "exercised his own free choice with a full knowledge of his rights." We cannot say that there are insufficient facts of record to support this finding of voluntariness. As in Langdeau v. South Dakota, 8 Cir., 446 F.2d 507 (1971), in which petitioner asserted that he pleaded guilty because of conditions of his confinement in a county jail (the jail not segregated into cells, the jail crowded beyond its normal capacity, harassment by other prisoners, dislike of the food served), so it is in the case before us.

The question is whether the plea of guilty was "an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences.'" McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763, 771. "[T]he fact that the jail conditions 'caused' the plea does not demonstrate that petitioner was unaware of all the surrounding factors and their 'likely consequences.' Here the record unequivocally demonstrates to the contrary. The facts are insufficient to hold as a matter of law that invidious discrimination or psychological coercion induced an involuntary guilty plea." Langdeau v. South Dakota, supra, 446 F.2d 1. c. 509. In Collins v. State, Mo.Sup., 450 S.W.2d 186, we denied postconviction relief under Criminal Rule 27.26 founded upon a contention that a plea of guilty was induced by conditions of jail servitude while awaiting trial. We repeat here the quotation from Verdon v. United States, 8 Cir., 296 F.2d 549, 552, that "[d]issatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea." The trial court's finding on this point is not clearly erroneous on this record.

(2) that he pleaded guilty to a charge of escape because the prosecuting attorney threatened to file against him under the Habitual Criminal Act, in which case he understood he would receive the maximum sentence of five years if he did not plead guilty; that he believed he was not charged under the Habitual Criminal Act and told his counsel that the prosecuting attorney had made this threat. On cross-examination the prosecuting attorney showed movant the original information substantiating the fact that he had been charged under the Habitual Criminal Act from the outset. Movant admitted that there was never any secret about the range of punishment being from two to five years; that he knew he could get five years if he went to trial before a jury, and

that he did not understand that he would automatically get five years under the Habitual Criminal Act. The prison official testified that he and movant had no conversation having anything to do with sentences. The court found against movant on this conflicting testimony; found that movant did not plead guilty under duress of threats of prosecutor or prison authorities. This finding has support of record.

(3) that he pleaded guilty under the belief that the sentence for escape would run concurrently with the sentence he was already serving; that neither his counsel, the prosecuting attorney nor the court advised him to the contrary; that a prison official told him the sentences "would be run together." The prison official specifically denied this fact. On cross-examination movant conceded that before accepting the plea of guilty the court asked him whether he understood that whatever punishment was imposed on the plea of guilty would be "in addition" to whatever sentences he was then serving; that he understood this and answered "Yes." The court found that no promise of concurrency was made to movant; that in fact the court had explained to movant that the sentence imposed would be additional, and that the plea was entered knowingly and with full information as to movant's rights in this respect. This finding is not clearly erroneous.

## INEFFECTIVE COUNSEL?

■ Movant contends that court-appointed counsel had no experience in criminal law; admitted to movant that he was not qualified to handle a criminal case and particularly not to try this case before a jury; made no investigation of the facts, conferred with movant only one time for five minutes before the plea was entered and during that five-minute interview did not discuss the evidence or the merits of the case; that counsel's representation was perfunctory and ineffective. Appointed counsel testified as follows: He counselled with movant before the preliminary hearing was waived in magistrate court and again after he was appointed in circuit court. He answered all of movant's ques-

tions and inquired whether he had any defenses. Movant related no facts which could be used as a defense and directed his attention to no witnesses to be interviewed to obtain facts which might constitute a defense. Counsel "carefully questioned" him before he entered his plea. From the outset movant stated he had no defense and wanted to plead guilty. Movant's only concern was the amount of sentence. The only reluctance counsel expressed to movant was a reluctance to try the case before the jury without any defense and the possibility of receiving a greater sentence by so proceeding. Counsel expressed no reluctance to try the case based upon his inadequacy to try jury cases. On cross-examination counsel stated that his practice was limited to corporate work for many years; that he had been in private general practice only recently and had not tried a criminal case but did not recall having conveyed this fact to movant; that counsel discussed with movant punishment under the Habitual Criminal Act, the matter of concurrent and consecutive sentences, and did not represent that the sentence for escape would run concurrently with his existing sentence; that there was no question in movant's mind that this would be a consecutive sentence; that counsel did not tell him that a jury would fix his punishment at five years; that they discussed the matter and finally agreed that he would be better off to take the recommendation of the prosecuting attorney for a three-year sentence.

The court found the issues on which the testimony conflicted against movant and that counsel "advised movant of his rights to trial by jury, the extent or range of punishment on conviction, and rendered all required legal assistance to movant." There is a basis in this record for this finding, which is not clearly erroneous.

## CRIMINAL RULE 25.04

■ Movant asserts that the trial court failed to discharge its duties before accepting his plea of guilty; that the trial court

"did not go into any matters relating to defendant's treatment" or inquire into the condition of his mind (referring to the claim of mental coercion to plead guilty in order to get out of the basement); that a determination of the voluntariness of the plea sufficient to satisfy the requirements of the law was "not shown in the record herein"; and that no effort was made to determine whether movant had been properly advised or understood the consequences of a plea. The transcript of the record of the proceedings at the time the plea of guilty was entered (an exhibit not filed with the transcript but supplied at the request of the clerk of this Court) demonstrates that the court did comply with the requirements of Criminal Rule 25.04. The court appointed the same attorney who had represented movant at the preliminary hearing. Formal arraignment, explained to movant, was waived and movant personally pleaded guilty, accompanied by his counsel. Before accepting the plea the court asked and movant answered affirmatively these questions: whether movant had an adequate opportunity to consult with counsel, friends and associates concerning the entry of a plea; whether his appointed lawyer had advised with him prior to entering his plea; whether counsel explained to him that he had the right to defend against this charge, confront the witnesses produced by the State against him, cross-examine them, present evidence and any defense he might have and be tried by a jury; whether counsel had explained to him the range of punishment he might receive on pleading guilty (adding "You may receive anywhere from two to five years punishment, and do you also understand that whatever punishment is rendered by the court on this plea of guilty will be in addition to whatever sentences you are now serving," to which movant answered "Yes"). The court asked whether anyone had threatened him to induce him to enter the plea of guilty. Movant answered in the negative. In answer to the question "Has anyone promised you anything if you would enter such a plea of guilty?" mov-

ant answered, "Well, I will plead guilty to three years." The court inquired as to movant's age (29), elicited the fact that he had a high school education, and received an affirmative answer to the question whether by the plea he was admitting to the court that he did escape from the training center for men as charged in the information. The court then accepted the plea, and after receiving the prosecuting attorney's recommendation of three years and granting allocution, sentenced movant to confinement for three years.

At the 27.26 hearing movant conceded that the court had asked him "some questions"; that he had been informed of his right to trial by jury, his right to discuss the matter with friends and his attorney and that he had told the judge that he had done so; and that the punishment imposed would be in addition to that previously imposed for other crimes. When asked whether he had any other testimony to support his allegation that the court did not discharge its duties before accepting the plea of guilty movant answered, "No, I don't guess." The court made the following finding of fact and conclusion of law:

"Movant alleges the court did not discharge its duties before accepting movant's plea of guilty. No evidence was presented to substantiate this allegation. The court finds from a transcript of the proceedings at the time the plea was entered that the court made a determination that the movant did voluntarily and knowingly entered his plea of guilty before accepting such plea."

The assigned failure of the court to interrogate concerning movant's treatment or condition of mind (i. e., his desire to get out of the basement) affords no ground for relief under the circumstances. Movant admitted that he did not complain to the judge that he was being held in security but "concealed" this from the court when he pleaded guilty. He further admitted that he did not complain to his lawyer that his detention in maximum security

was coercive so that he could not make up his mind freely, and that he had already made up his mind to plead guilty at the time he waived the preliminary hearing in the magistrate court. The facts surrounding movant's claim of mental coercion not having been intimated or brought to the attention of court or counsel there is no basis for the claim that the court was derelict in not raising that question before accepting the plea.

 Citing Doepke v. State, Mo.Sup., 465 S.W.2d 507, movant asserts that his response, "Well, I will plead guilty to three years," demonstrates that movant's plea was equivocal (conditioned on obtaining a sentence of three years) and that under Criminal Rule 25.04 the court should have entered a plea of not guilty for him; that this answer demonstrates that plea-bargaining took place. There was no misleading of movant and no misapprehension, as in Doepke. We interpret his answer to mean that he understood that if he pleaded guilty he would receive and be content with the three-year sentence which counsel had informed him the prosecuting attorney would recommend; not that his plea was equivocal or conditional. Nor did his answer demonstrate that plea-bargaining (as between movant and court) had taken place. The record shows that plea-bargaining did take place between the prosecuting attorney and movant's attorney, but such plea-bargaining of itself does not render a plea of guilty involuntary or void. Meyer v. United States, 8 Cir., 424 F.2d 1181; Ford v. United States, 8 Cir., 418 F.2d 855.

Finding of fact No. 6 is not clearly erroneous but on this record is fully supported.

## INFORMATION DEFECTIVE?

In his brief movant states that he "offers no evidence in support of this contention but relies rather upon the Court's ability to read said information and determine whether it meets with such particu-

lars [sic] and exactness to comply with the statutes relating thereto." The information is not made a part of the transcript on appeal and is not before us. Movant has failed to supply the record and has failed to meet the burden of proof on this point.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.